# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET MONTEON, et al., <br>     Plaintiffs, <br><br> v. <br><br> M.A.C. COSMETICS, INC., et al. <br>     Defendants. | CV 18-3952 DSF (Ex) <br><br> Order DENYING Plaintiff's Motion to Remand (Dkt. 19) |

Plaintiff Janet Monteon filed this putative class action in California Superior Court, County of Los Angeles, against Defendant M.A.C. Cosmetics, Inc. (MAC). Dkt. 1, Notice of Removal (NOR), Ex. A (Compl.). Plaintiff seeks to represent the following class: "All non-exempt employees of [MAC] in the State of California from four years prior to the date of filing of this complaint, as shown by [MAC's] timekeeping and payroll records." Compl. ¶ 7. Plaintiff brings claims for (1) unpaid rest periods, (2) unreimbursed business expenses, (3) failure to timely pay final wages upon termination, (4) failure to provide accurate wage statements, and (5) unlawful business acts and practices.

MAC removed the action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). NOR at 1-2.[1] Plaintiff now

---

[1] MAC also contends remand would "be at the expense of judicial economy," but judicial economy does not provide a basis for federal jurisdiction.

moves to remand.  The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  The Motion is DENIED.

## I. LEGAL STANDARD

CAFA gives federal courts jurisdiction over class actions involving at least 100 class members, minimal diversity, and at least $5 million in controversy.  28 U.S.C. § 1332(d).  "When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so."  Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 551 (2014).

Once confronted with a motion to remand, the defendant bears the burden of establishing jurisdiction by a preponderance of the evidence.  "The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal."  Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015) (citation omitted).  Although "a damages assessment may require a chain of reasoning that includes assumptions," "those assumptions cannot be pulled from thin air but need some reasonable ground underlying them."  Id. at 1199.

## II. DISCUSSION

### A. CAFA Jurisdiction

The parties dispute the amount in controversy element of CAFA jurisdiction.  Mot. to Remand (MTR) at 5-7.  MAC contends the amount in controversy is between five and eight million dollars, broken down as follows:

| Claim | Amount in Controversy |
| --- | --- |
| Rest Break Premiums | $1,694,851.20 - $4,237,128 |
| Business Expenses | $576,480 - $1,092,272 |

| Inaccurate Wage Statements | $1,596,332 |
| Waiting Time Penalties | $1,008,000 |
| Attorneys' Fees | $136,850 |
| **Total** | $5,012,513.20 - $8,070,582 |

MTR Opp'n at 7-10.[2]  Plaintiff argues MAC has not sufficiently established these amounts.

1. <u>Rest Break Premiums</u>

California Labor Code § 226.7(b) provides that "[a]n employer shall not require an employee to work during a meal or rest or recovery period." Employers must provide rest breaks at the rate of ten minutes for every four hours – or major fraction thereof – worked. Cal. Code Regs. tit. 8, § 11140. The penalty for not providing meal or rest breaks is "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Labor Code § 226.7(c). Plaintiff's UCL claim seeks restitution of wages going back four years for MAC's alleged failure to provide rest breaks. Compl. ¶¶ 42.

MAC's original rest break calculation assumed two violations per week for each of the 1,253 putative class members

---

[2] For rest break premiums and business expenses, MAC provides two calculations: one based on Plaintiff's proposed four-year class period (February 28, 2014 through May 11, 2018), and another based on a limited period (March 15, 2016 through May 11, 2018) due to a prior class action settlement which resolved class rest period claims through March 14, 2016. Because the Court must assume the allegations of the complaint are true in determining the amount in controversy, the Court uses Plaintiff's four-year period. See <u>Korn v. Polo Ralph Lauren Corp.</u>, 536 F. Supp. 2d. 1199, 1205 (E.D. Cal. 2008) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually owe*.") (emphasis in original).

3

identified at the time of removal.  NOR ¶ 12.  Using the above, and an average hourly rate of $15.00, MAC estimated that at least $3,458,880.00 was in controversy.  Id. ¶ 12(b).

Plaintiff contends MAC's calculations are unreasonable because her rest break claims apply only to MAC employees who worked shifts between six and eight hours.  MTR at 5-6 (citing Compl. ¶¶ 2, 13, 19(b)(2)).  Plaintiff provides a declaration estimating that 40% of MAC employees were part-time employees, who worked shifts that were typically between five and six hours in length.  Monteon Decl. ¶¶ 5, 6.  According to Plaintiff, part-time employees are not part of her proposed rest period class, so MAC's damages estimate should be revised with at least a negative 40% multiplier.  MTR at 6.

In opposition, MAC provides a declaration from Scott Mayhugh, MAC's Human Resources Director.  Using Plaintiff's proposed class period (February 28, 2014 through May 11, 2018), Mayhugh identifies 743 of the 1,542 putative class members as full-time employees who would regularly have worked five 6-8 hour shifts per week.  Mayhugh Decl. ¶ 6.  Those 743 purported members worked approximately 118,573 workweeks.  Id.  Assuming two rest period violations occurred per full-time employee per week, MAC estimates at least $3,557,190 (118,573 workweeks × $15.00 average hourly wage × 2 violations per week) is in controversy.  MAC contends this is a conservative estimate given Plaintiff alleges MAC failed to timely provide second rest periods across the board.

Plaintiff responds that MAC's estimates are flawed because full-time employees often work more than eight hours (e.g., during holidays), shifts that would not incur any rest period liability.  It is not clear to the Court why this would reduce the rest period liability.  In any event, the Court finds MAC's rest break premium to be reasonable.  Plaintiff alleges MAC "published, promulgated,

4

and disseminated a policy which only provides for a second paid rest period after eight hours of work, rather than six hours." Compl. ¶ 23.  Individually, Plaintiff alleges she was subject to MAC's "uniform, written, and disseminated rest period policy which did not authorize or provide a second paid rest break after six hours of work, but only after eight."  Id. ¶ 2.  Plaintiff alleges she and the putative class are owed rest break premiums "for all shifts from six to eight hours in length, which premiums were not paid."  Id.  On these allegations, it is not a stretch to imagine a significant violation rate for MAC employees who worked between six and eight hours.  See, e.g., Mejia v. DHL Express (USA), Inc., No. CV 15-890-GHK, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) ("It is not unreasonable to assume that when a company has unlawful policies and they are uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those policies are applied.").  The Mayhugh Declaration also states that MAC's full-time employees are generally scheduled for six to eight hour shifts.  Mayhugh Decl. ¶ 4.  Given this evidence, MAC's extrapolated violation rate of two noncompliant rest periods per week is reasonable.

The Court finds that MAC has established a rest break premium of $3,557,190 by a preponderance of the evidence.

2. Unreimbursed Business Expenses

California Labor Codes §§ 2800 and 2802 require employers to reimburse employees for all reasonable and necessary expenditures incurred in discharging their job duties.  Plaintiff alleges losses related to MAC's "instructions to download the Group Me company application, which was used daily for communications between the company and its employees."  Compl. ¶ 28.  Plaintiff alleges she sent and received approximately twenty messages per day.  Id. ¶ 3.

Defendant calculates the amount in controversy by multiplying an estimated weekly amount of unreimbursed expenses ($5.00) by the total number of workweeks (218,455) to arrive at a figure of $1,092,272. Plaintiff does not dispute MAC's calculation; the Court finds MAC's estimate appropriate.

3. Inaccurate Wage Statements

"An employee suffering injury as a result of a knowing and intentional failure by an employer" to provide accurate wage statements under section 226(a) "is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Cal. Labor Code § 226(e)(1). The statute of limitations for penalties under section 226(e)(1) is one year. MAC's Notice of Removal applied a $2,600 penalty for each putative class member, putting $3,257,800 in controversy. NOR ¶ 12(d); MTR Opp'n at 9-10.

Plaintiff contends MAC's calculations are inflated because her wage statement claim is derivative of her rest period claim, so part-time employees must be excluded. MAC mostly concedes this point, and after excluding part-time employees, re-calculates wage statement penalties of at least $1,596,322. MTR Opp'n at 10.[3]

Plaintiff also refers to MAC's $2,600 penalty as "arbitrary." Reply at 6-7. MAC does not explain in its papers or by declaration where the $2,600 figure comes from. Presumably, MAC assumed

---

[3] The Court does not understand why MAC discounted the original total by .49 instead of simply multiplying the number of full-time employees by the penalty amount. The difference, however, is negligible ($1,596,322 vs. $1,596,400).

6

twenty-six violations for each employee, one per pay period.  See Cal. Labor Code § 204(a) ("All wages . . . are due and payable twice during each calendar month.").  As explained above, Plaintiff alleges that MAC "published, promulgated, and disseminated" a policy that prohibited rest breaks for employees that worked between six and eight hours.  Compl. ¶ 23.  Combined with MAC's evidence that most full-time employees worked six to eight hour shifts, MAC has proffered sufficient evidence to infer that a violation occurred for each employee in every pay period.

The Court finds that MAC has proven a rest break premium of $1,596,322 by a preponderance of the evidence.

4. <u>Waiting Time Penalties and Attorneys' Fees</u>

MAC has sufficiently demonstrated that the amount in controversy exclusive of waiting time and attorneys' fees exceeds the threshold, so the Court need not decide either of these issues.

## III.   CONCLUSION

MAC has demonstrated by a preponderance of the evidence that the amount in controversy exceeds $5 million.  Plaintiff's Motion to Remand is DENIED.

IT IS SO ORDERED.

Date: July 5, 2018

Dale S. Fischer
United States District Judge